Lucille GASTON, Relator,

v.

NORTH STAR LANES, et al.,
Respondents.

No. 50754.

Supreme Court of Minnesota.

July 3, 1980.

Petersen, Tews & Squires, St. Paul, for relator.

Gene P. Bradt, St. Paul, for respondents.

YETKA, Justice.

Certiorari to review a decision of the Workers' Compensation Court of Appeals which, with one judge dissenting, set aside an award to employee of continuing temporary total disability benefits and benefits for a 35% permanent partial disability of her back, substituting findings that from and after June 18, 1977, she was not temporarily totally disabled as the result of a work-related personal injury she had sustained on July 9, 1976, and that she had sustained a 10% permanent partial disability for which she was awarded benefits. We affirm in part, reverse in part, and remand for further proceedings.

The facts may be briefly stated. Employee, a 60-year-old waitress who worked for the employer from 12 to 14 hours a week, sustained an injury to her low back on July 9, 1976, when she bent to the floor and picked up a 50-pound bucket of dishes. Although she had had occasional back pain for which she had obtained chiropractic treatments in prior years, it had never been disabling. She testified that she has had constant low back pain since the occurrence of this incident and knows of no work she can do. She had formerly engaged in sports, but said that she now has increased

pain when she attempts to do her housework. The employer-insurer paid employee temporary total disability benefits until June 17, 1977, discontinuing payment then on the ground she was no longer disabled.

The medical witnesses agreed that the injury, whatever its nature, had been superimposed upon and aggravated a long-standing degenerative lumbar disc disease. They differed in their opinions on the extent of permanent partial disability resulting from the injury and on what effect it had had on employee's ability to be employed.

Dr. J. L. Duncan, D. C., who has treated employee since April 1977 expressed the opinion that employee possibly could go back to the type of work she had been doing for 2 or 3 hours at a time, if she did not carry more than 10 pounds, and if she did not bend. He estimated that she had sustained a 50% permanent partial disability to her spine of which 40% was attributable to the work injury.

Dr. John Beer, a board-certified orthopedic surgeon who examined employee several times on behalf of the employer-insurer, expressed the opinion that employee had suffered a "sprain type lesion" but no permanent partial disability as a consequence of the work incident. He conceded, however, that she had complained of persistent low back pain each time he saw her and agreed that she should not return to work involving heavy lifting or repeated bending. It was his opinion that she could do light work as of January 7, 1976.

Dr. Albert E. Daly, also a board-certified orthopedic surgeon, estimated that employee has a 10% permanent partial disability which he attributed both to the injury and to her degenerative back disease. He expressed the opinion that employee was capable of doing the work she had been doing for 3 hours a day, subject to a lifting restriction of 10 to 15 pounds.

Dr. William D. Ferraccio, a board-eligible orthopedic surgeon, expressed the opinion that the work incident has caused "some acute change" in employee's back as a consequence of which she has a 35% permanent partial disability. He also expressed the

opinion that employee should not lift more than 10 to 12 pounds, should avoid activities requiring repeated lifting, and should not do waitress work. He also thought that work involving prolonged sitting or standing would aggravate her condition.

A vocational counselor familiar with employment opportunities in the community testified that in her opinion employee could not obtain light work without retraining for it. The counselor also expressed the opinion that, in view of employee's age, education (a year and a half of high school), employment experience, and her physical condition, retraining was not feasible. When contacted by the Division of Vocational Rehabilitation, employee stated that she was not interested in working or in retraining.

■ As stated, the majority of the court of appeals after considering this evidence set aside the compensation judge's determination and determined that employee's permanent partial disability of the back was 10% and that she has not been temporarily totally disabled from and after June 18, 1977. Although employee challenges both findings, the medical testimony clearly permitted the finding made with respect to her permanent partial disability and it will not be disturbed.

■ With respect to the finding that employee is no longer temporarily totally disabled, the author of the majority opinion in which one other judge concurred viewed the preponderance of the evidence as establishing that on and after June 18, 1977, employee was "capable of gainful employment as long as she stays within the limitations as prescribed by the physicians." We are not certain that this is a correct assessment of the evidence if employee's own testimony about her symptoms and the effect of activity on her condition is given due weight. *Brening v. Roto-Press, Inc.*, 306 Minn. 562, 237 N.W.2d 383 (1975). In any event, a determination that employee possibly could work is not an adequate basis for a finding that she is no longer temporarily totally disabled. *Henry v. Sears, Roebuck*

*and Co.*, 286 N.W.2d 720 (Minn.1979). It is well established that an employee is totally disabled "when the employee's physical condition, in combination with the employee's training and experience, and the type of work available in the employee's community cause the employee to be unable to secure anything but sporadic employment resulting in an insubstantial income." *Henry v. Sears, Roebuck and Co.*, 286 N.W.2d at 723. With this definition in mind, we are compelled to conclude that the record as a whole does not contain substantial credible evidence that employee is no longer temporarily totally disabled and, on the contrary, requires the finding made by the compensation judge that her total disability has been continuing from and after June 18, 1977, unless on or before that date employee had in fact, and without regard to her physical condition, determined to retire.

■ Three judges of the Workers' Compensation Court of Appeals also viewed the evidence as establishing that employee had indeed retired by June 18, 1977, when the employer-insurer discontinued their payment of temporary total disability benefits. There was, however, no evidence unequivocally establishing employee's intent to retire on a specific date regardless of her disability, as was the case in *Joens v. Campbell Soup Co.*, 281 N.W.2d 695 (Minn.1979). The evidence upon which the majority relied in finding such an intent included the fact that employee did not seek work and the fact that she is receiving social security (after first receiving disability benefits which were discontinued when she became eligible for social security). Neither fact supports the inference that employee intended to retire. *Henry v. Sears, Roebuck and Co., supra.* Whether the evidence that employee informed the Division of Vocational Rehabilitation that she was not interested in any work or in any retraining reasonably permits an inference that she had voluntarily retired depends largely on whether her disinterest in work and retraining proceeded from an intent to retire, regardless of her disability, or was the consequence of her reasonable belief that because of her condition either course would be fruitless. It would clearly be contrary to the spirit of the compensation laws to deny a disabled worker compensation if, but for the disability, he or she would still be in the labor force. Consequently, we have concluded that the appropriate disposition of this case is to remand the matter with directions to permit the parties to furnish further evidence, if available, on the issue of whether employee had voluntarily retired from the labor force on or before June 18, 1977.

Employee is allowed attorneys fees of $400.

Affirmed in part, reversed in part, and remanded.